Good morning. May it please the Court, my name is Douglas Nelson. I'll be giving the case on behalf of the petitioners. The petitioners in this case are a 74-year-old husband, Bosnian Serb, and a 66-year-old wife, also a Bosnian Serb. As they were just about to retire, they were forcibly, they were forced out of their home by Croats and they lost everything that they had accumulated over 66 years. Now, two of the fundamental mistakes that the government has made in this case are, first, the government states in its response that the evidence shows that petitioners were never persecuted in the past. This is incorrect. The government is referring to the petitioner's testimony, which they stated that they were not physically threatened or harmed before 1995. But in July 1995, the Croats descended upon their village, which was mostly Bosnian Serb, and in an effort to ethnically cleanse that village, they forced this family out of their home. The petitioners had ten minutes to gather their things, their belongings. They were able to take two bags apiece and they never returned to their home. Now, this is after a lifetime of living in that same community. Their family had lived in that home for a hundred years, which was a historical landmark, because the British and U.S. forces had used their home during World War II, and their families had lived in that community for over 150 and 200 years in different areas. Counsel, pardon me for interrupting you. Let's get something out of the way. You're no longer claiming that the BIA streamlining of the Dnesevich's appeal constitutes a violation of due process, correct? Well, subsequent to the Falcone-Cariccia, we are not pursuing that, but I would be happy to address that matter. It's a point of contention. Where is the evidence, if any, that the Dnesevich's, who sound like terrific people, were persecuted in any way other than the persecution to which all Serbians in Bosnia-Herzegovina, which were subjected by Croats or Muslims? They weren't singled out. There wasn't any evidence of personalized persecution. They were, like many Europeans during the World War, displaced persons by bombing, but they weren't persecuted for their political opinions individually, were they? Well, Your Honor, that is my second problem with the government's position. The government says that these individuals were displaced. Displaced is not the appropriate word here. Displaced or displacement happens to a population when, suppose, two warring factions come in and the individuals caught in the middle have to leave in order to flee for safety. In this case, one faction, specifically targeted Serbs and Muslims. But the Dnesevich is all Serbs. That's true, all Serbs, based upon their ethnicity, which is a ground, one of the five grounds for asylum. Don't the cases require individualized persecution to qualify under the persecution branch or the persecution or well-founded fear? Well, I would disagree. I think that, based upon an ethnicity, that would be sufficient. An appropriate analogy, I think, is, let's say a Jewish couple had fled Nazi Germany because they were forced from their homes prior to being placed into a concentration camp. Their persecution, their fleeing from their home, was a direct result of the Nazis ethnically cleansing and religiously cleansing those individuals from their community. And it would be inhumane to return that same Jewish couple to Germany, even after Hitler's demise. That could be grounds under the humanitarian exactly. We're talking now about persecution. Your position is that individualized persecution is not a requirement. So long as they are persecuted because of their membership in the ethnic group, and you've given a very good example of Jewish people fleeing the Nazis, that would be sufficient. Yes, Your Honor. Are there cases that say that? Not specifically that say that, but there are many cases which state that you do not have to suffer harm, specific harm, in order for you to show persecution. Threats are sufficient in order to show persecution. Let's say you took a hypothetical of, let's say, some West African country, not a specific one that I'm thinking of, but just the example. And let's say there were different tribes in the country that had been at war for centuries, and that one of the tribes got into power in the government and decided to do an ethnic cleansing of the other tribe. And they were going to, you know, all of the Xs wanted to flee, and all the Ys flee. Are they refugees? When, you know, someone flees, like the Knezoviks flee because they think all the Serbs are going to get wiped out. Are they then refugees? Is that sufficient to show persecution when they have an immediate threat that if they don't flee, they're going to be destroyed? I believe that they are refugees because they are the direct target of the government's persecution. They are not a group caught in the middle of the conflict, but they are... General civil strife in a civil war and just people are caught in the middle of it or at risk from it, it's clear that that isn't persecution. But you're saying if they're the target of a force in the country, a governmental force, they can be? Yes, Your Honor. Now, this is not to say... Between, say, during World War II, citizens of London trying to get political asylum in the United States when London was being bombed versus, say, people in the Warsaw Ghetto when the Warsaw Ghetto was trying to be annihilated. Well, first, the persecution in that instance happened in an entirely different country. There were two separate countries. It's not as if the persecution occurred within the same country under the same government or control. Second, in that example, it isn't specifically based on membership in a particular social group or ethnicity, just the fact that they may be politically opposed to the Nazi regime. So, I mean, those are the distinctions I can draw for that. Let me ask you in the time that remains, you only have a couple of minutes left, why can't these folks now, assuming they were persecuted on account of the protected ground, why can't they go back to Serb-controlled Bosnia-Herzegovina? Because we believe the experience of persecution that they suffered has so seared their memories and they have such distressing associations with their native country that it would be necessary to take into consideration their age. Matter of Age, which is board precedent, says that when you're looking at humanitarian considerations, you have to examine the person's family, their age, and their health. This couple was set to retire and they have lost everything because of their ethnicity. They were close to facing death had they not been lucky enough to flee. And for that reason, we think that it would be inhumane to return them. Now, we think those two primary mistakes by the government that I've outlined today are compelling reasons which warrant reversal. I have a minute and 20 left. Do you want to save that for rebuttal? Yes, unless you have another question. Thank you, sir. Thank you. Good morning. My name is Kurt Larson. I represent the Attorney General in this case. The police have failed to prove that they're eligible for asylum. Their situation is a result of civil war. They are not refugees. They are displaced persons. Why don't you address the argument with specificity as to whether if a group is a target of some type of attack, whether it's Serbs who the Croats want to do ethnic cleansing or Jews in Nazi Germany or some tribe in a West African country who's lost power and their historical opponents are in power. If someone's a target and the whole group could be wiped out, explain to me the government's position on that. Well, first of all, let's take the example of Bosnia-Herzegovina itself. Serbs were against Croats. Croats were against Muslims. Muslims were against, you know, all factions were fighting there. So if you were to take that template and state that simply because an ethnic group is fighting an ethnic group, they cleanse that ethnic group, all of Bosnia-Herzegovina would rape refugee status, period, end of statement. And that would be hundreds of thousands, if not millions, of individuals that rape refugee status. I think you're quite right. I think you're exaggerating. Okay. The Serbians who were driven out by the Muslims and Croats would be persecuted. And the Muslims and Croats who were driven out by the Serbians would be persecuted. Correct. But the people who remained in the areas where the majority ethnic group was theirs and controlled would not be persecuted. The lines were moving around so quickly between 1995 and 1997. I was a Marine and I was over there for that time period. The lines moved so quickly. We're talking about what happened to these people. I mean, there's no question that they were in Dervar and were pushed out by Croat artillery, right? Right. So let's just take that one instance. If we were to take the template of saying the Croats bombing Dervar, there was 97% of those individuals were Serbian. And there were 17,000 people living in that city. So you'd be stating, if you took that template, you would say that 16,500 would be granted refugee status. What we did when we looked over what is a refugee versus what is a displaced person, they specifically looked into that issue and they wanted to decide whether and how broad this should be for what is a refugee. Because when a person is given refugee status, non-rape or not, it comes into place where you can't send them back to where they would be persecuted. And that is a legal holding. That's a different ground. We're not talking about well-founded fear of persecution if they go back. We're talking about whether they were persecuted. And that's a separate ground for refugee status, correct? That's persecution and a well-founded fear of future persecution. But if you are persecuted under international law, non-rape or not, not turning somebody back to a country where they were persecuted is the reason why we have withholding of deportation and withholding of removal. And it's the way, 208 versus 243. Let's look at the issues we've got here. The petitioner testified that he was never physically harmed. He was never detained. No threats were ever made against him. During a time of civil war, his town, the entire town, came under fire by Croat forces. He acknowledged that a peace treaty, he left, and he acknowledged that a peace treaty had been signed between the warring factions. He also recognized that 49% of Bosnia-Herzegovina is controlled by the Serbs. He also conceded that if he went back, NATO forces would protect him. Now, Your Honor, you asked a question concerning give me some case sites as to, you know, if we're going to do ethnic cleansing at this level, does it rate protection as a refugee status? I'll give you sites why it doesn't rate it. The one site I would give you is Sanchez Torrio, 801 F. 2nd, 1575. And also another one, Espinosa Martinez, 754 F. 2nd, 1537. Particularized individual persecution, not merely conditions of discrimination, must, must be shown before asylum will be granted. That concludes my argument. Thank you. Nelson, you have a little over a minute left. Thank you. Now, I'm not arguing that all the persons who were forced out of Bosnia are eligible for relief. It doesn't mean that they all come to the United States either. As is evident in this record, the son of this family used to work for the Red Cross, and the Red Cross brought him to Canada, and he was able to receive refugee status in Canada, where he still lives today. I'm saying that the persons who make it to our shores and who abide by the law and who fulfill the requirements for asylum should be granted such, as does this family. Counsel mentioned the cases of Sanchez Rio and Espinosa Martinez, and if I'm not mistaken, those address discrimination as opposed to persecution. We believe that these, my clients have specifically shown that they were, that they feared persecution and that it would be inhumane to return them today. Thank you. Anything further? Thank you. Thank you. Mr. Nelson, Mr. Larson, thank you very much. The matter discard you to submit.
judges: Silverman, Gould, Bea